IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CYNTHIA HUNT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:14-CV-298 (MTT) |
| ) | |
| THE MACON ORTHOPAEDIC & HAND ) | |
| CENTER, P.A. d/b/a ORTHOGEORGIA, ) | |
| and WINSTON R. JESHURAN, II, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## ORDER

Plaintiff Cynthia Hunt brings this action against her former employer, Defendant The Macon Orthopaedic & Hand Center, P.A. d/b/a OrthoGeorgia ("OrthoGeorgia") and her former supervisor, Defendant Winston R. Jeshuran, II. She alleges violations of Title VII, the Family and Medical Leave Act, and related state law claims against OrthoGeorgia. The only claim she asserts against Dr. Jeshuran is for intentional infliction of emotional distress. Before the Court is Dr. Jeshuran's motion to dismiss. (Doc. 10). For the following reasons, the motion is **DENIED**.

I.   BACKGROUND[1]

Cynthia Hunt worked as a physician assistant ("PA") for OrthoGeorgia in Macon, Georgia, from February 2010 until her termination on October 28, 2013. (Doc. 1, ¶¶ 8-9). She alleges Dr. Winston R. Jeshuran, II, her direct supervisor, "treated [her] less favorably than her male counterparts" and "constantly badgered and berated [her]

---

[1] The following facts are allegations from the Plaintiff's complaint taken as true for purposes of deciding the motion.

because she was female." (Doc. 1, ¶ 11). Dr. Jeshuran "regularly demean[ed] [Hunt] in front of other employees for the purpose of insulting and upsetting her," while treating male employees "with courtesy and respect." (Doc. 1, ¶ 12). For example, Dr. Jeshuran repeatedly called Hunt a "'space cadet,'" told her to "'get over herself,'" and accused her of being dramatic. (Doc. 1, ¶ 16). He also threatened to terminate her for going to previously scheduled and approved doctor's appointments and on one occasion told her she "'better only miss work if someone dies.'" (Doc. 1, ¶ 17).

In addition to these allegations, Hunt describes two specific instances of Dr. Jeshuran's demeaning behavior toward her. Around June 2011, Dr. Jeshuran "publicly humiliated [Hunt] in front of a large number of the staff of Northside Hospital, bringing her to tears by telling [her] to 'just leave now,' as she tried to assist him in surgery." (Doc. 1, ¶ 13). On May 17, 2013, "after a simple misunderstanding," Dr. Jeshuran told Hunt to "'just leave [the clinic],' and told her she was 'useless.'" (Doc. 1, ¶ 14) (alteration in original). Dr. Jeshuran did not exhibit the same behavior when dealing with male PAs with whom he had misunderstandings. Hunt further alleges this type of harassment was "continuous throughout [her] three year span of assisting Jeshuran[,] and his conduct inhibited [her] ability to fully perform her job." (Doc. 1, ¶ 15). Dr. Jeshuran's conduct allegedly "caused [her] severe emotional distress." (Doc. 1, ¶ 51).

Hunt also alleges she complained about Dr. Jeshuran's behavior to Bill Lindsey, OrthoGeorgia's CEO. (Doc. 1, ¶ 19). Hunt was terminated about a month after she complained of Dr. Jeshuran's conduct. (Doc. 1, ¶ 23).

## II.     DISCUSSION

### A.     Motion to Dismiss Standard

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (internal quotation marks and citation omitted).  However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002).  The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (internal quotation marks and citation omitted).  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts.  *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993).

### B.     Plaintiff's Claim for Intentional Infliction of Emotional Distress

To prevail on a claim for intentional infliction of emotional distress, the Plaintiff must demonstrate that:

> (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional

> distress; and (4) the emotional distress was severe. The defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law.

*Steed v. Fed. Nat'l Mortg. Corp.*, 301 Ga. App. 801, 810, 689 S.E.2d 843, 851-52 (2009) (internal quotation marks and citation omitted). "The rule of thumb in determining whether the conduct complained of was sufficiently extreme and outrageous is whether the recitation of the facts to an average member of the community would arouse her resentment against the defendant so that she would exclaim[,] 'Outrageous!'" *Wilcher v. Confederate Packaging, Inc.*, 287 Ga. App. 451, 453, 651 S.E.2d 790, 792 (2007) (internal quotation marks and citation omitted). Factors to consider include "the existence of a relationship in which one person has control over another, the actor's awareness of the victim's particular susceptibility, and the severity of the resultant harm." *Trimble v. Circuit City Stores, Inc.*, 220 Ga. App. 498, 499-500, 469 S.E.2d 776, 778 (1996) (citations omitted).

Dr. Jeshuran first contends the complaint fails to sufficiently allege the complained-of conduct was "extreme and outrageous." Georgia courts have recognized that an employment relationship "may produce a character of outrageousness that otherwise might not exist … [because] it provides a captive victim who may fear reprisal for complaining, so that the injury is exacerbated by repetition, and it presents a hierarchy of structured relationships which cannot easily be avoided." *Coleman v. Hous. Auth. of Americus*, 191 Ga. App. 166, 169, 381 S.E.2d 303, 306 (1989) (internal quotation marks and citations omitted). "Even in an employment relationship, however, major outrage in the ... conduct complained of is essential to the tort." *Metro. Atlanta*

*Rapid Transit Auth. v. Mosley*, 280 Ga. App. 486, 491, 634 S.E.2d 466, 470 (2006) (internal quotation marks and citation omitted). Georgia courts have also repeatedly recognized that "[c]omments made within the context of one's employment may be horrifying or traumatizing, but are generally considered a common vicissitude of ordinary life." *See, e.g.*, *Hodor v. GTE Mobilnet, Inc.*, 244 Ga. App. 297, 299, 535 S.E.2d 300, 302 (2000) (internal quotation marks and citation omitted). Thus, it is unclear precisely what effect the employment relationship has on an intentional infliction of emotional distress claim under Georgia law. *See Harris v. Proctor & Gamble Cellulose Co.*, 73 F.3d 321, 323-24 (11th Cir. 1996).

Based on the uncertain effect of the employment relationship and the types of claims courts have allowed to proceed, the Court cannot, at this point, say Hunt's allegations are insufficient as a matter of law. Hunt alleges Dr. Jeshuran repeatedly demeaned her during the three years she worked for him, while treating male PAs with respect and courtesy. Though the particular incidents alleged in the complaint do not in and of themselves constitute extreme and outrageous conduct, the specific incidents coupled with the allegations of sustained abuse are sufficient. *See Couick v. Morgan*, 2010 WL 5158206, at *7 (S.D. Ga.) (noting pattern of sustained abuse may be sufficient to state a claim); *Anderson v. Chatham*, 190 Ga. App. 559, 567, 379 S.E.2d 793, 800 (1989) (noting that, while threatening encounter with supervisor after termination might not be sufficiently outrageous in isolation, it "came after a described pattern of abusive behavior after the two had had a lengthy working relationship").

Dr. Jeshuran also argues the complaint does not sufficiently allege Hunt suffered severe emotional distress. Hunt alleges the complained-of conduct brought her to

tears, "inhibited [her] ability to fully perform her job," and her resulting emotional distress was severe. (Doc. 1, ¶¶ 13, 15, 51). The Court concludes Hunt has alleged severe emotional distress sufficiently to withstand a motion to dismiss.

### III.   CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss is **DENIED**.

**SO ORDERED,** this 17th day of February, 2015.

> S/ Marc T. Treadwell
> MARC T. TREADWELL, JUDGE
> UNITED STATES DISTRICT COURT